**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

FOR PUBLICATION

----------------------------------------------------------------x

In re:

Chapter 11

AMR CORPORATION, *et al.*,

Case No. 11-15463 (SHL)

(Jointly Administered)

                                        Debtors.

----------------------------------------------------------------x

KAREN ROSS and STEVEN EDELMAN,
On behalf of themselves and all others
similarly situated,

                        Plaintiffs,

                                                    Adv. Pro. 12-01865

vs.

AMR CORPORATION and AMERICAN
AIRLINES, INC.,

                        Defendants.

----------------------------------------------------------------x

## <u>MEMORANDUM OF DECISION</u>

Before the Court is a motion (ECF No. 11) (the "Motion") by the Debtors (the "Debtors or "American"), seeking to dismiss Plaintiffs' complaint (the "Complaint") filed in the above-captioned adversary proceeding (the "Adversary Proceeding").  Debtors allege that Plaintiffs' claims are precluded under the doctrine of *res judicata* because of a prior settlement and court order resolving such claims and releasing American from any liability for them.  For the reasons stated below, the Motion is granted.

## **BACKGROUND**

In 1981, Defendant American Airlines, Inc. introduced its American AAdvantage program, which allows passengers to accumulate credits for flying on American that can be redeemed for flights or upgrades.  Complaint ¶¶ 8-10.  Today the program has more than twenty airline partners and over one thousand other partners with whom AAdvantage members can earn and redeem miles.  Complaint ¶ 11.

When the program was instituted, the mileage credits had no expiration.  Complaint ¶ 12. In 1988, American instituted certain changes to its AAdvantage program.  Those changes applied to miles already earned by program members.  Complaint ¶ 13.  As a part of those changes, American altered the program so that miles earned on and after July 1, 1989, became "New Miles" that could expire, as distinct from "Old Miles" earned prior to July 1, 1989, which did not expire.  Complaint ¶¶ 11-12.  In addition to the distinction between Old Miles and New Miles, American also instituted "capacity controls" on Old Miles—giving American the right to limit the number of seats on each of its flights for which AAdvantage awards could be redeemed. Complaint ¶ 13.

Following the 1988 changes to the program, a class action was filed against American in Illinois state court and eventually reached the Supreme Court of the United States.  *See American Airlines, Inc. v. Wolens*, 513 U.S. 219 (1995).  The *Wolens* class claimed that the 1988 changes interfered with their "vested rights" to miles they had already earned and thereby constituted a breach of contract.  *Id*. at 224-25.  After remand from the Supreme Court, the *Wolens* class action settled and was dismissed by the state court with prejudice.  Complaint ¶ 15; Final Order at 40, ¶4.  The settlement consisted of an agreement between American and the class (the "Settlement Agreement") that was incorporated into a final order entered by the Illinois state

court (the "Final Order," and collectively with the Settlement Agreement, the "*Wolens*

Settlement").[1]  As a part of the *Wolens* Settlement, the class expressly released its claims against

American and gave American a broad reservation of rights that, among other things, allowed

American to limit, modify or cancel AAdvantage members miles awards.  Settlement Agreement

¶ 10(a)-(d).  This exceedingly broad reservation of rights gave American wide latitude in making

future changes to its AAdvantage program:

> the Court hereby declares and adjudges that American may, and is legally
> permitted to, in its discretion, change the AAdvantage Program rules, regulations,
> travel awards, and special offers at any time with or without notice, and that the
> accumulation of AAdvantage Mileage Credit does not entitle members to any
> vested rights with respect to such mileage credits, awards, or program benefits.  In
> accumulating AAdvantage Mileage Credits or awards, members may not rely
> upon the continued availability of any award or award level, and members may
> not be able to obtain all offered awards for full destinations or on all flights.  Any
> award may be withdrawn or subject to increased mileage requirements or new
> restrictions at any time.  American Airlines may, and is legally permitted to,
> among other things, (i) withdraw, limit, modify, or cancel any award; (ii) change
> program benefits, mileage levels, participant affiliations, conditions of
> participation, rules for earning, redeeming, retaining or forfeiting AAdvantage
> Mileage Credits, or rules for the use of travel awards; or (iii) add black out dates,
> limit the number of seats available for award travel (including, but not limited to,
> allocating no seats on certain flights) or otherwise restrict the continued
> availability of travel awards or special offers. American may terminate the
> AAdvantage Program on six months' notice. American may make any one or
> more of the foregoing changes at any time though such changes may affect their
> ability to use the AAdvantage Milege Credits or awards that the members have
> already accumulated.  American Airlines reserves the right to end the credit or
> awards that you have already accumulated. American Airlines reserves the right
> to end the AAdvantage program with six month's notice.

Final Order at 41-42, ¶ 8.

The settling class, as defined in the Final Order, consisted of those AAdvantage members

that held more than 35,000 miles at the time American announced its changes to its awards

program in 1998.  *Id.* at 8, ¶21.  By virtue of their claimed ownership of Old Miles, the Plaintiffs

---

[1]    The Settlement Agreement and related Final Order are attached as Exhibit 1 and 2 respectively to
Debtors' Motion.

in this adversary were members of the *Wolens* class and did not opt out of the class for purposes
of the *Wolens* Settlement.  *See* Hr'g Tr. 138:3-10, Nov. 29, 2012.

On November 29, 2011 the Debtors filed a voluntary petition for relief in this Court
under Chapter 11 of the Bankruptcy Code.  On or about July 13, 2012 the Debtors provided
notice to the Plaintiffs that, effective November 1, 2012, it would convert all remaining Old
Miles into New Miles that would be subject to expiration and that could only be redeemed under
an awards structure implemented after July 1, 1989 ("New Awards Structure").  Complaint ¶ 17.

On September 14, 2012 Karen Ross and Steve Edelman filed this adversary proceeding
on behalf of themselves and all others similarly situated.  The Complaint asserts that the Debtors'
proposed conversion of Plaintiffs' Old Miles into New Miles constitutes a:  (i) breach of
contract, (ii) breach of implied covenant of good faith and fair dealing, (iii) anticipatory breach
of contract, and (iv) unjust enrichment.  Complaint ¶¶ 33-59.  The Complaint further alleges that
Plaintiffs relied on Debtors' promise to allow Plaintiffs to redeem their miles under the awards
structure in place before July 1, 1989 ("Old Awards Structure") and that Debtors' proposed
change is barred by promissory estoppel.

On October 5, 2012 the Debtors filed the Motion seeking to dismiss the Complaint based
on the *Wolens* Settlement.  Specifically, Debtors argue that the terms of the release and
injunction provisions contained in the *Wolens* Settlement bar the Plaintiffs' claims under the
doctrine of *res judicata*.  Motion ¶¶ 28-40.  The Plaintiffs, on the other hand, argue that their
claims are not barred for a variety of reasons, including that they are distinct from those
previously litigated and ultimately resolved through the *Wolens* Settlement.  Plaintiffs' Obj. at
18.

**DISCUSSION**

## I. APPLICABLE LEGAL STANDARDS

In analyzing a motion to dismiss under Rule 12(b)(6), a court looks to whether a plaintiff has plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A court must proceed "on the assumption that all the allegations in the complaint are true." *Id*. at 555. Taken as true, these facts must establish "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2007). "However, this does not mean that a claim must contain 'detailed factual allegations' to survive a Rule 12(b)(6) motion to dismiss." *Eastman Chem. Co. v. Nestle Waters Mgmt. & Tech.*, No. 11-2589, at *4, 2012 WL 4474587 (S.D.N.Y. Sept. 28, 2012) (citing *Talley v. Brentwood Union Free Sch. Dist.,* 08 Civ. 790, 2009 WL 1797627, at *4 (E.D.N.Y. June 24, 2009)). The court must determine "whether the well-pleaded factual allegations, assumed to be true, plausibly give rise to an entitlement to relief." *Hayden v. Paterson,* 594 F.3d 150, 161 (2d Cir. 2010) (citing *Iqbal,* 556 U.S. at 679).

"Generally *res judicata* is an affirmative defense to be pleaded in the defendant's answer. *See* Fed.R.Civ.P. 8(c). However, when all relevant facts are shown by the court's own records, of which the court takes notice, the defense may be upheld on a Rule 12(b)(6) motion without requiring an answer." *Day v. Moscow*, 955 F.2d 807, 811 (2d Cir.1992). "Dismissal under Fed. R. Civ. P. 12(b)(6) is appropriate when a defendant raises claim preclusion . . . and it is clear from the face of the complaint, and matters of which the court may take judicial notice, that the claims are barred as a matter of law." *Conopco, Inc. v. Roll Int'l*, 231 F.3d 82, 86 (2d Cir. 2000). As a result, where a court finds that the claims before it have been released through a prior settlement, it is then appropriate for the court to dismiss the complaint on the grounds that *res*

*judicata* prevents the plaintiff from pursuing those same claims again. *See Cost v. Super Media*, 482 B.R. 857, 863 (S.D.N.Y. 2012); *Cornelius v. United Parcel Serv., Inc.*, No. 11-CV-3206 (GBD), 2012 WL 975053, at \*1 (S.D.N.Y. Mar. 21, 2012) (granting motion to dismiss based on plaintiff's prior release of claims against defendant).

When a party relies on documents and incorporates those documents by reference into their pleadings, a court may consider those documents as part of its record. *See Cortec Indus., Inc. v. Sum Holding, L.P.*, 949 F.2d 42, 47 (2d Cir. 1991) (the court may consider documents that the plaintiffs had "actual notice of all the information" they contain and "relied upon [them] in framing the complaint"); *Allen v. WestPoint-Pepperell, Inc.*, 945 F.2d 40, 44 (2d Cir. 1991); ("In determining the adequacy of a claim under Rule 12(b)(6), consideration is limited to facts stated on the face of the complaint, in documents . . . incorporated in the complaint by reference, and to matters of which judicial notice may be taken." (citing *Kramer v. Time Warner Inc.,* 937 F.2d 767, 773 (2d Cir. June 27, 1991))). The Debtors have requested, and the Plaintiffs have not opposed, that the Court take judicial notice of the *Wolens* Settlement and the related public pleadings. *See* Fed. R. Evid. 201; *American Tissue, Inc. v. Donaldson, Lufkin & Jenrette Securities Corp.* 351 F.Supp.2d 79, 95 n.17 (S.D.N.Y. 2004) ("The Court can take judicial notice of matters of public record, (citation omitted), including filings in related lawsuits . . . ." (citing *Rothman v. Gregor*, 220 F.3d 81, 92 (2d Cir.2000))). Accordingly, this Court considers the terms of the Settlement Agreement and related Final Order in determining whether or not the issues raised in the Complaint are barred by the doctrine of *res judicata*.

"It is [well] settled that a federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984).

The Settlement Agreement provides that it is to be governed and interpreted "under the laws of

the State of Illinois," something not disputed by either party. Settlement Agreement at 33, ¶

17(g); Plaintiffs' Supp. Letter (ECF No. 34). As a result, this Court looks to Illinois law to

interpret and apply the terms and scope of the Settlement Agreement and Final Order. Under

Illinois law, "in order for *res judicata* to apply to bar a claim, three requirements must be

satisfied: (1) a final judgment on the merits has been rendered by a court of competent

jurisdiction; (2) the parties or their privies are identical in both actions; and (3) an identity of

cause of action exists." *Nelson v. Chicago Park Dist.*, 945 N.E. 2d 634, 642 (Ill. App. Ct. 2011),

*app denied*, 955 N.E.2d 472 (Ill. 2011) (citing *Hudson v. City of Chicago,* 228 Ill.2d 462, 467,

321 Ill.Dec. 306, 889 N.E.2d 210, 213 (2008) (quoting *Rein v. David A. Noyes & Co.,* 172 Ill.2d

325, 334, 216 Ill.Dec. 642, 665 N.E.2d 1199, 1204 (1996))).

## II.     The Wolens Settlement

The Court concludes that the Wolens Settlement satisfies each of the three requirements

of *res judicata* and, therefore, bars the Plaintiffs' claims in this case.

Turning to the first prong, Plaintiffs argue that the *Wolens* Settlement did not constitute a

"final judgment" on the merits under Illinois law. *See* Plaintiffs' Supp. Letter. The Court

disagrees. It is well established under Illinois law that a dismissal with prejudice constitutes a

"final order" for the purposes of *res judicata. Nelson v. Chicago Park Dist.,* 945 N.E.2d 634,

640, 642 (Ill. App. Ct. 2011), *app. denied,* 955 N.E.2d 472 (Ill. 2011) (stating that a trial court's

order dismissing the prior action with prejudice "was a final judgment on the merits that satisfied

the first element of res judicata."); *see also Aguilera v. Freedman, Anselmo, Lindberg & Rappe,*

*LLC,* No. 10-cv-5488, 2011 WL 2292302, at *7 (N.D. Ill. June 8, 2011). The same principle

applies in class action settlements. *See, e.g., Harrison v. Sheriff of Cook County,* No. 11-cv-

5583, 2012 WL 1578421, at **2-3 (N.D. Ill. May 4, 2012) (applying Illinois law and granting a

motion to dismiss a class action where settlement was previously entered and the trial court had

"entered an order that effectively dismissed the claim of all class members with prejudice."").

Where a party has released its claims as part of a settlement, therefore, that party is precluded

from reasserting those claims in subsequent litigation.  *See Tropp v. Western-Southern Life Ins.*

*Co.*, 381 F.3d 591, 596 (7th Cir. 2004) ("[A] release incorporated into an order approving of a

class action settlement bars subsequent litigation based on the released claims.""); *see 4901 Corp.*

*v. Town of Cicero*, 220 F.3d 522, 530 (7th Cir. 2000) (holding that a settlement agreement that

was adopted in a courts dismissal order "is a final judgment that is entitled to *res judicata*

effect." (citing *Jackson v. Schencker & Schencker*, 98 Ill. Dec. 547 (Ill. App. Ct. 1986))).

    The facts of this case clearly satisfy the final judgment requirement of the *res judicata*

test.  In fact, the state court in *Wolens* did far more than dismiss the case with prejudice.  As

Debtor's correctly note:

> [i]n deciding whether to approve the settlement, the court considered the parties'
> settlement proposal, appointed a former judge to assist in assessing the
> settlement's fairness, heard testimony from a former Illinois Supreme Court
> justice regarding fairness issues, obtained the advice of an independent economic
> expert, considered objections to the proposed settlement, and ultimately entered
> its Final Order.

Debtors' Reply to Plaintiffs' Supp. Letter (citing Final Order ¶¶65-69, 76-82).  It was only after

that substantial review that the *Wolens* court dismissed the class action with prejudice.  Final

Order at 40, ¶4.  Indeed, the Settlement Agreement contemplates that the parties would "jointly

request the entry of a Final Order" which they labeled as a "Final Order, Judgment of Dismissal

with Prejudice and Release."  Settlement Agreement ¶ 11(d).

    Turning to the second prong, it is undisputed that Plaintiffs were class members in the

*Wolens* case.  *See* Hr'g Tr. 138:3-10.  Plaintiffs nonetheless contend that the broad reservation of

8

rights in the Final Order does not apply to them or their Old Miles because they were carved out

of the Final Order. Plaintiffs' Obj. at 21-22. But, tellingly, the Plaintiffs do not cite to any

language in the Final Order or the Settlement Agreement demonstrating that they were carved

out of the *Wolens* Settlement. This is true even though other items are, in fact, carved out of the

*Wolens* Settlement, such as the settlement certificates that Plaintiffs received. Final Order at 41-

42, ¶¶ 8-9. The only language cited by Plaintiffs in support of a purported carve-out is the

statement in the Final Order that "Old [M]iles do not expire, unless the program is terminated."

Plaintiffs' Objection to Motion at 12 (citing Final Order [p.4] ¶10). That statement, however,

does not support Plaintiffs' position. The cited language merely appears in the recitation of facts

in which the court is describing the distinction between Old Miles and New Miles created by

American's 1998 changes to its AAdvantage program. Given the clear right of American to

change the program going forward, this statement cannot be understood to exempt Plaintiffs'

current lawsuit from the *Wolens* Settlement. Moreover, if Plaintiffs believed that they should be

carved out of the Final Order, they should have bargained for explicit language in the agreement,

especially given that Plaintiffs clearly bargained to have the settlement certificates explicitly

carved out.

Turning to the third prong, the Court concludes that the plain language of the *Wolens*

Settlement releases and settles the same causes of action asserted in this adversary proceeding.

The Final Order clearly and unequivocally gives American the right to, among other things,

withdraw, limit, modify, subject to restrictions, cancel or terminate AAdvantage miles at

American's discretion. Final Order at 41-42, ¶ 8. In addition, the Final Order permits American

to "change program benefits, mileage levels, participant affiliations, conditions of participation,

rules for earning, redeeming, retaining or forfeiting AAdvantage Mileage Credits, or rules for the

use of travel awards. . . ." *Id.* The broad scope of the Settlement Agreement dovetails with the language of the Final Order, where the court decreed that Plaintiffs could not contest future changes to the AAdvantage program by American. Settlement Agreement ¶ 10(b); Final Order at 40-41, ¶¶ 4-7. Indeed, the Final Order provides that the class members are "barred and permanently enjoined" from pursuing any claims "known or unknown" that the class member "now has, ever had, or hereafter may have, against the [r]eleased [p]arties, arising out of or in any way connected with or related to the claims released" in *Wolens*. *Id.* at ¶ 6. Thus, the plain language of the *Wolens* Settlement is unambiguous, broad and clearly releases the claims Plaintiffs now assert.

Plaintiffs seek to avoid the broad language of the Settlement Agreement and Final Order by asking this Court to parse through the pleadings in the *Wolens* litigation to determine what claims were and were not litigated and to allow them to proceed on those claims that were not asserted in the initial *Wolens* litigation. That is not the law. The scope of a settlement agreement is determined by the terms of the settlement itself. *See 4901 Corp. v. Town of Ciero*, 220 F.3d 522, 530 (7th Cir. 2000) (holding the scope of preclusion had been broadened by the settlement agreement and that *res judicata* barred not only claims that had previously been brought, but also those claims that could have been brought as well); *Keith v. Aldridge*, 900 F.2d 736, 740-41 (4th Cir. 1990) ("If the parties intended to foreclose through agreement litigation of a claim, assertion of that claim in a later suit, whether or not formally presented in the earlier action, is precluded.").

Even if we assume the Plaintiffs' position that its claims were not brought in the prior *Wolens* litigation, the terms of the *Wolens* Settlement govern and here they unambiguously broadened the scope of the settlement to include those claims now being asserted. *See Oswald v.*

10

*McGarr*, 620 F.2d 1190, 1198 (7th Cir. 1980) ("A settlement offer is a compromise and may include a release of claims not before the court."). Taken together, the Settlement Agreement and Final Order in *Wolens* unequivocally bar claims that Plaintiffs now seek to litigate. To read the *Wolens* Settlement in the manner advocated by Plaintiffs also would make little sense given the circumstances surrounding the prior litigation. Under the *Wolens* Settlement, the Plaintiffs were provided with a settlement that the court found to be a "fair compromise of the Wolens [a]ction" as agreed to by Plaintiffs and memorialized in the Final Order. Final Order ¶ G; *id.* at 41-42, ¶ 8. Without a release of claims related to the changes they made to the AAdvantage program, the Debtors would have received essentially nothing in exchange for putting the class members in "substantially the same positions that they were in before the AAdvantage program modifications." *Id.* at 8, ¶ 19. If Plaintiffs did not consider the claims they now bring to be part of the *Wolens* Settlement, then they should have balked at the injunction language contained in the Settlement Agreement and Final Order ─ language to which they agreed ─ that released all claims the parties had "known or unknown" or "in any way related to" the claims being released therein. Final Order at 41-42, ¶ 8. This language is extremely broad and unforgiving for the Plaintiffs' arguments. Short of drafting an infinite list of every specific claim they could possibly imagine, American could not have bargained for a more sweeping release.

For the reasons discussed above, therefore, the *Wolens* Settlement constitutes a final judgment that covers the claims Plaintiffs asserted in this lawsuit. As the Debtors have met the three requirements for the application of *res judicata*, the Plaintiffs are precluded from reasserting the same claims.

11

## CONCLUSION

Because the claims asserted in the Plaintiffs' Complaint are barred by the doctrine of *res judicata*, the Debtors' Motion to Dismiss is granted.  The Debtors shall settle an order on three days' notice.


Dated: New York, New York
       April 22, 2013                    */s/ Sean H. Lane*
                                         UNITED STATES BANKRUPTCY JUDGE